Dillon, J.
Omitting the inducement contained in this petition, the substance of the complaint here is that the wife of tins plaintiff was induced to leave and abandon him, together with his two minor children, and that in connection therewith a divorce ease was instituted by her against -him; in which case the two attorneys for his wife, his own two attorneys who represented him in that case, the common pleas judge who sat upon the bench and heard the case and the two brothers of his wife, making seven persons in all, conspired and agreed together that they would alienate her affections., separate them by judicial decree, deprive him of -the society of his wife and his children and whatever pecuniary interest he may have had by way of dower in her property, and that by this agreement of these seven persons this was accomplished, and .a pretended hearing was had before the common pleas judge and a fraudulent judgment and decree rendered against him.
In a case of this kind where a layman comes into court and makes charges which affect four lawyers, practitioners at the bar and officers of the court, and also affecting a judge of the court of common pleas, it is the duty of the court to lend a most listening ear to every part of such complaint. It is the duty of the court, as conceive it, to give, if possible, a stricter attention and circumspection to every act, in order that it may never be said by the people of this commonwealth that any leniency whatever will be extended by the court to its own officers, or to its associates, that the fountains of justice may, *471 in the minds of the people, be known to be pure. Therefore in this case it has been my special duty to give particular attention to each bit of evidence that has been adduced here, in order that it may be known to the people of this state and -to the bar of this state, that a complaint of this kind shall be fully heard, rigidly investigated, and so far as the fallibility of human judgment permits, determined righteously.
At the conclusion of the plaintiff’s testimony in this case a motion has been filed asking the court to direct a verdict of the jury for each .and all of the defendants, and this, of course, tests the sufficiency of the evidence which has been adduced.
I will first very briefly discuss the liability of the judicial officer. In cases of this kind the principle is well settled, both by authority and by reason, that no civil action can be maintained against .a judicial officer for the recovery of damages by one claiming to have been injured by his judicial action within his jurisdiction. From the very nature of the case, the officer is called upon, by law, to exercise his judgment in all matters before him, and the law holds his duty to the individual to be performed when he has exercised it, however erroneous or disastrous in its consequence it may-.'appear to be, either to the party or to others. When a judg'e does as he deems just between particular individuals, who may have a controversy, this is not considered to be the end and sole object of his judicial act; that is to say, the sole object, purpose .and end are not simply to settle rights of individuals. There is. still a higher object to be attained, and that is the duty which the officer owes to -the public. Justice is to be meted out, to the end that peace and order may prevail' in political society and in the commonwealth in which we all live. This duty is a public duty and the end to be accomplished is, therefore, largely for the public welfare. Individual advantage or loss may result from a proper and thorough, or an improper or imperfect, performance of duty. The judge performs his duty to- the public by doing justice between individuals. Or if he fails to do justice as between individuals, he may be called to account by the state in such form and before such tribunal as the law may have provided. It *472 may, at first consideration, impress one that if a judicial officer, however, should corruptly and maliciously do violence to his oath of office, and, therefore, render a wrong or injury to another, that such case would be taken to be without this rule; but the immunity of judicial officers from civil liability is not affected by the motives with which they are alleged to have performed their duty.
The statement of Mr. Justice Field, in the case of Bradley v. Fisher, 13 Wall., 335—speaking now for the Supreme Court of the United States—has been 'often quoted. I find it quoted very frequently in different cases and it may not be amiss to quote it here:
“Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts., in which there is great conflict in the evidence and great doubt as to the law which should govern their decision It is this class of cases which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility. Yet it is precisely in this class of eases that the losing party feels most keenly the decision against him, and most readily accepts anything by the soundness of the decision in explanation of the action of the judge. Just in proportion to the strength of his convictions of the correctness of his' own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge. When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern,,or touches the interests of numerous parties, the disappointment 'occasioned by an adverse decision often finds vent in imputations of this character, and from the imperfection of human nature this is hardly a subject of wonder. If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently treated to institute an action against a judge for his judicial acts would hesitate to .ascribe any character to the acts which would be essential to the maintenance of the action.
*473 ‘ ‘ If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated ease, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party.—and that judge perhaps one of an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.”
The exception, therefore, to this rule exists only in those cases where the judge acts without jurisdiction, for the judge in such ease would be a mere trespasser and he is disrobed of his cloak of protection. Fie is acting where he has no right to act and as a mere individual. In such cases a. judge may be held liable.
In this case, it is claimed that Judge Middleton did not have jurisdiction and, therefore, he may be held liable .as a matter of law. I think this is founded upon a misconception of what is meant by jurisdiction. Jurisdiction by virtue of law is one thing and jurisdiction by virtue of the existence of certain essential facts is another thing. In this ease, as a matter of law, the defendant in this case, Judge Middleton, 'had jurisdiction. That is to say, he had jurisdiction of the subject-matter, it being his particular, sole and exclusive province to hear divorce eases, and he also had jurisdiction of the parties by reason of the fact that each party was before the court. It is required by statute that .a divorce shall not be granted to any person unless. that person has resided for one year in this state. Unless the judge therefore finds, as a matter of fact, that that is true, he will -have no right to pass upon the merits of the divorce case, however aggravated a case may be presented. But whose duty is it to pass upon that question of fact? That'of the common pleas judge hearing the case; and having heard the evidence, it becomes solely and exclusively a part of his discretion to determine whether or not the facts presented establish that the *474 plaintiff did have a residence of one year in the state of Ohio. If, as a matter of fact, from all of the evidence adduced, the circuit court or any other appellate court should be of a different opinion, nevertheless, they are without jurisdiction to reverse that particular finding of the judge, and if it were a case which they might review, the rule of liability would be the same. Therefore, the common pleas court had the right, and it was within its discretion, to determine from the evidence adduced whether or not, as a matter of fact, from all of the facts presented, the plaintiff had a residence in this state. The same is true with reference to what degree and to what extent the trial court in such cases will • require corroborative proof. It is within the discretion of the judge. The statute is directory. It is the duty of the judge in each particular case to exercise discretion. It is not unfrequently the ease—especially in the smaller communities—where the judge has a personal acquaintance with the parties to the divorce suit, to say to -the attorneys: “I 'have known the plaintiff in this ease so many yearn and you need not bring any more-witnesses to show the good character of the plaintiff.” On the other hand I know in my own experience—and it is probably true with other judges— where three or four witnesses have come forward and testified to the good character of the party, but the judge personally knows the character of the party to be vicious and bad, and has refused a divorce, thus, exercising that discretion and judgment, to which I have referred, not depending upon the testimony a.t all, but disregarding it.
It follows from the view entertained upon this subject, that the contention of counsel by Judge Middleton that he ought not be held in this case, is right. But he has seen fit of his own volition for the good of society, as well as, for 'his own character and reputation, to submit to this investigation, and asks for the opinion of this court upon the evidence that may be adduced against him.
As to Judge Middleton, perhaps it is a mere voluntary act on the part of this court, and yet I think it requires very little explanation from me in announcing that the evidence adduced *475 in this case has not, in any degree whatever, connected him with any of these charges made in the petition; that is to say, there is not a scintilla of evidence, and if inference to the opposite effect might be drawn from the evidence adduced here, then no judicial officer is safe in deciding any case either for the plaintiff or for the defendant, unless the counsel and parties in the case agree with the court in its decision. As a matter of law, therefore, for the two reasons given, I must sustain the motion in behalf of Judge Middleton.
The question then arises as to whether or not the contention of defendant’s counsel is correct that all of the other six defendants must likewise be discharged for that reason only. In civil eases, as distinguished from criminal cases, where conspiracy is charged, the gravamen -of the offense is not the conspiracy, but the actual injury done.
I read from the 6th American & English Encyclopaedia of law, at page 872:
“Conspiracy in its civil aspect, considered as the ground of an action on the case for damages, partakes of none of the distinguishing characteristics of the criminal offense.
“And a civil action for damages, it has been held, suffered by reason of a conspiracy, might be instituted against a single defendant, or if brought against several, a verdict against one and in favor of the others would not necessarily be improper.
“It would seem, however, even in the case of the civil action, that where the defendants aré charged with having done the plaintiff an injury which could only have been inflicted by the joint action and mutual co-operation of the defendants, the proof must implicate all, or enough to have done the injury charged. ’ ’
I conceive it possible, therefore, that even with the common pleas judge out of this case, the plaintiff might make a case against the other six or a less number, and therefore, for that reason alone I do not feel disposed in dismissing these defendants.
Coming now to the case as made against the other six defendants, it is admitted that sometime prior to the institution of this divorce proceeding, to-wit, on November 6, 1903, a *476 written -agreement was made between the plaintiff in this ease and his wife. The substance of this agreement is that they separate from each other. She agreed to relieve him of all responsibility as head of the house, for any expenses for maintenance of the children. He agreed to give her the exclusive control and possession of the children. She agreed to give him $4,000 in settlement of their property relations, and finally they both agreed that she should get a divorce and he would not oppose it. Some three or four months later she actually instituted the case for divorce which is- the basis of this action. He says on his part that he was not in earnest; that this agreement was entered into- by him for the-purpose of using it at any time he might see fit to prevent her from getting a divorce, being advised it would be preventive of that action. That she believed it and acted upon it there is no- question. That both of them fulfilled it, so far as her paying him the $4,000 is concerned, and relieving him from any further expenses, and giving her the custody of the children, and further, that they both carried it out to the extent of separating, there is no dispute.
There has been some misconception 'here as to- the extent of taint in this agreement. This agreement is valid 'as to the custody of these children. It is valid as to' the alimony feature of it. It is valid as to their agreement to separate from each other. It is valid so far as the two parties themselves are concerned—as to her agreement to support the children and relieve him from that duty.
What is a collusive agreement? I read from Stewart on Marriage and Divorce, Section 302, which gives a very -terse -and apt illustration:
“Collusion is the parties’ agreement'to make up a case for the purpose of obtaining a div-or-ce. Collusion may be active, as where one of the parties agrees with the other that he will commit -the act complained of to give her a cause for divorce, or passive, as where the uund-erstanding is that the defendant shall suppress facts which might constitute a good defense.”
I might add to that definition, it would also be collusive where the parties agreed to manufacture false testimony. None of *477 these -three elements—the two given by Stewart or the one I have added—are embraced in this contract. The only part of this contract, therefore, which may be considered as a nullity is that part where they agreed with reference to a divorce. The courts ignore that and treat it as a nullity. It is not an offense against the law. It is an agreement which ignorant people often make. They -are not punishable for it, but the law will not enforce it. And further than that, the court, upon notice of such an agreement for divorce, will scan all the more closely the testimony offered and may exercise the discretion in a punitive way, and therefore as a preventive measure by refusing a decree.
I will briefly quote from the 9th American & English En-cyclopaedia of Law, at page 832:
‘ ‘ Collusion is a conspiracy of the husband and wife to obtain a divorce by suppression of the facts or by false or manufactured testimony. ’ ’
Reading from page 833:
“But a case for divorce will not be dismissed, however, where one of the parties discloses all the facts to the court -and contests the case in good faith.”
That is to say, where a person had unlawfully and almost corruptly, we will say, agreed to suppress testimony or to -manufacture testimony, comes into court and shows an agreement to the court and explains it and then presents a m-eretorious ease, the court will not necessarily, as a punitive and preventive measure, refuse a decree for divorce. If any other doctrine should be maintained it would simply follow that two parties who would make a collusive agreement for divorce would forever -afterwards be precluded from getting a divorce, however much one ox the other may have been entitled to it.
In the case at bar, that part of the agreement presenting the infirmity reads as follows:
“The object of this agreement is solely for the purpose of amicably obtaining a divorce and continuing our friendly regard. ”
*478 So far there is no suppression of the facts, or manufacture of new evidence. There is no agreement to suppress facts. The effect of such an agreement as this, therefore, is as. I see it, that the court might in its discretion as a punitive measure refuse or more likely it might scan more carefully and give the strictest circumspection to all of the testimony adduced, especially if the defendant himself should not appear.
The next point I wish to pass upon is whether or not the plaintiff himself agreed to that separation. That he made his wife believe it was thoroughly established in this ease. In fact, it is not disputed that he did everything under that agreement himself as therein provided. Ilis appearance at the divorce case is not disputed. If it be that he did agree to this contract and acted under it, it would necessarily follow, as. a matter of law, that he could not afterwards complain or .ask any judgment in damages for its consummation. This follows under the well-known principle of the law, that he who consents or contributes to his own injury can not recover for it. Again, if the payment of $1,500 made by the wife through her attorneys to the plaintiff, .after this divorce case was over, was done, as claimed by plaintiff, for the purpose of preventing him from testifying, and he carried that agreement out and did not testify, but did take the money, another reason exists, equally potent, which would prevent him. from recovering. And if the payment of that $1,500 by the wife to him was, as claimed, reprehensible, it involved the plaintiff, as well as the other parties to it, and participation therein would unquestionably estop him from maintaining this action. In explanation of both of these matters—the signing of the agreement and his. acceptance of this $1,500—the plaintiff explains that he so acted for a different purpose and was not intending to be bound by it. I do not believe the law will permit such a defense to be set up against a solemn agreement made by a man with his wife with respect to the custody of his children and the maintenance of them and their property rights, especially where the execution of that part of the agreement with reference to property rights have been carried out. No principle of law which *479 I can invoke will countenance that defense. He will not be permitted afterwards to say that he was not in earnest because, if he were so permitted, then every solemn legal instrument which might be lawfully executed between the parties, could just as easily be set aside ánd held for naught by one of the parties to the agreement so testifying. Is that sufficient testimony to go before this jury and save this plaintiff from estoppel, which must follow if he had not so testified? It is clear to me that if this jury is to adopt the plaintiff’s explanation for his signing this agreement for separation, and of his acceptance of the $4,000, and his acceptance of the $1,500, and his reasons for not testifying in court, in the face of all the evidence that has been adduced here, it would be the duty of the court to set such verdict aside. If the evidence of the former attorneys for the plaintiff as.to this conduct in defending him in the divorce case be true, no ease of any kind is made. If the plaintiff’s testimony as to his transaction and dealings with these two attorneys be true, he may have, to some extent, tended to establish a ease 'against them for malpractice and which, •of course, I can not consider here. The acts and the things brought out by plaintiff in evidence here are referable to and consistent with proper motives so far as this ease is concerned, and waiving the rule that such motives should be favored rather than a wrong motive impugned, it would do violence to law, logic and reason to deduce from the evidence adduced here any such wrongful acts as are charged in this petition. Whether or not there is a scintilla of evidence here to establish this case I need not at this time discuss or determine. It is sufficient for me to say that the rule which I have adopted and which I expect the Supreme Court of Ohio will adopt, is that the court must sit as something more than a mere moderator; and if the evidence so far adduced is in the opinion of this court not sufficient to sustain a verdict, and if, therefore, at the conclusion of all the evidence the court would be compelled to set t-he verdict aside if for plaintiff, it is useless to take further time and have the defendants adduce their testimony. All the federal courts, and I believe every state in *480 the Union (except Ohio- and one other), as well as the logic of the subject, have eliminated the scintilla rule from the law of evidence, and I believe the practice in Ohio, in fact if not in open announcement, has come to this view.
C. G. Pamy, for plaintiff.
H. J. Booth, for defendants.
For the several reasons given I instruct the jury to return a verdict for the defendants.